**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Glenn JORGENSON, Defendant-
Appellant.**

**No. 591–70.**

United States Court of Appeals,
Tenth Circuit.

Nov. 19, 1971.

Certiorari Denied Feb. 22, 1972.
See 92 S.Ct. 959.

Phil L. Hansen, Salt Lake City, Utah, for appellant.

James F. Housley, Asst. U. S. Atty. (C. Nelson Day, U. S. Atty., on the brief), for appellee.

Before LEWIS, HILL and DOYLE, Circuit Judges.

HILL, Circuit Judge.

Jorgenson, with five individual co-defendants and two corporate co-defendants, was indicted jointly of conspiracy to defraud an agency of the United States, *viz*, the Federal Housing Administration, in violation of 18 U.S.C. § 371. In addition, 14 separate counts charged each of the eight co-defendants with preparing fraudulent F.H.A. Title I Home Improvement Loans with knowledge of false statements made on the loan application in violation of 18 U.S.C. § 1010. Two counts were later dismissed, and all charges were dismissed as to Millard, who later testified in behalf of the government. It is the remaining twelve separate counts which form the basis for the conspiracy charge. Jorgenson was convicted by a jury and sentenced to pay a fine of $1,000 on each of Counts One (conspiracy count), Two and Three (substantive counts), the fines to be concurrent for a total of $1,000. The sentence was suspended on the remaining ten counts, and Jorgenson was placed on two years' probation on those counts.

Appellant raises four arguments urging this Court's reversal of his conviction. The first argument is that the ruling of the trial court restricting cross-examination by defense counsel constituted an abuse of discretion and denied Jorgenson his constitutional right to confront witnesses against him. His second claim of error by the trial court was the failure to sever him from the trial of the other co-defendants. He contends there was either improper joinder under F.R.Crim.P. Rule 8 or, in the event joinder under Rule 8 was proper, he was prejudiced by being made a co-defendant, therefore should have been severed under F.R.Crim.P. Rule 14. His third claim of error questions whether his absence at certain times during the proceedings was grounds for mistrial. Appellant's fourth point questions the sufficiency of the government's evidence to justify the trial court's denial of his motion for judgment of acquittal under F.R.Crim.P. Rule 29 (a).

The conspiracy allegedly was begun when the individual co-conspirators, employees of Manning Investment Company (Manning), contacted automobile dealers and explained a financing program available through Manning, the corporate co-defendant. The plan involved prospective automobile purchasers who were also home owners. When this type of customer was found, he was informed of more favorable financing available on the basis of his home ownership. After the purchaser had selected the vehicle he desired, a credit application was filled out on the automobile dealer's credit application form. The purchaser was then permitted to take the automobile and was told he would be contacted later for an appointment to complete the credit arrangements. The automobile dealer subsequently relayed the credit information to Manning which, in turn, relayed the information to an employee in the Home Improvement Loan Department of Zions Savings and Loan Association (Zions), usually the appellant Jorgenson, who was manager of that department. He would then complete a Zions work sheet based on this credit information, with the indication that the loan proceeds were to be used in making authorized home improvements on the borrower's home.

Jorgenson, after getting the loan approved by the loan committee at Zions, of which he was one of the three members, would have a promissory note prepared for the borrower's signature and a check prepared for the amount of the loan. He then notified one of the co-conspirators at Manning that the loan

had been approved and that the automobile dealer should arrange an appointment between the purchaser, himself, and one of the co-conspirators at Manning. At the meeting, the purchasers were asked to fill out an F.H.A. form, "Credit Application for Property Improvement Loan". On the section of the form for listing the property to be improved, the purchasers were told to enter that the proceeds were to be used for an improvement to their home. Upon questioning this procedure, they were assured that nothing was wrong. After the form was completed, the purchaser would sign the promissory note, and the check drawn on the Zions account would be delivered to the purchaser. The purchaser then endorsed and delivered the check to the co-conspirator from Manning who, after deducting a commission, delivered the proceeds to the particular automobile dealer. Jorgenson would then take the credit application form and the promissory note back to Zions and place them in the loan file. In time, the loans were submitted to F.H.A. for approval and insurance.

Jorgenson first argues a restriction imposed by the trial court on defense counsels' cross-examination was reversible error either as an abuse of discretion or a denial of Sixth Amendment right of confrontation and assistance of counsel. The restriction was that counsel for the five co-defendants not be repetitive in their cross-examination so far as it could be avoided. The court later elaborated that defense counsel were not "to repeat what other defense counsel have cross-examined on, where it goes to exactly the same point."

The record reveals an exchange between the court and appellant's counsel concerning the characterization and limitation of the restriction. The court characterized it as an understanding among counsel and the court that the limitation extended to only same questions on cross-examination. Appellant's attorney, however, felt this was a ruling by the court restricting cross-examination of the same area.

 Clearly, the right of cross examination is fundamental in our judicial system.[1] Indeed, we have long held "[a] full cross-examination of the witness upon subjects of his examination in chief is the absolute right, not the mere privilege, of the party against whom such witness is called, and denial is prejudicial error." Minner v. United States, 57 F.2d 506, 512 (10th Cir. 1932). The error of restrictive cross-examination arises in either or both of two contexts. The restriction may be such as to constitute a denial of the Sixth Amendment right of confrontation. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). A limitation of cross-examination, though deemed not prejudicial to the accused's rights, may still be determined to be an abuse of discretion by the trial court. Harries v. United States, 350 F.2d 231 (9th Cir. 1965).

 Any reversal of the conviction on the basis of restrictive cross-examination must be based upon a showing of either or both a denial of a due process right of confrontation or an abuse of discretion by the trial court in limiting cross-examination. The claimed denial of the right of confrontation is premised in an assertion that Jorgenson's defense counsel was not permitted to ask the same questions as other defense attorneys had previously asked. The right of confrontation extends to *areas* of cross-examination. An area which is properly subject to cross-examination cannot be denied the accused. A limitation which prevents cross-examination into an area which is properly subject to cross-examination does constitute reversible error.[2] The characteristic feature in this situation is the complete denial of access to an area which is properly the subject of cross-examination;

1. Harries v. United States, 350 F.2d 231 (9th Cir. 1965).

2. *See* Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748 (1968); Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).

the *extent* of cross-examination is discretionary with the trial judge.[3] Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L. Ed.2d 956 (1968). This distinction has been long recognized by this Court. In Arnold v. United States, 94 F.2d 499 (10th Cir. 1938), we stated at 506:

> A reasonably full cross-examination of a witness upon the subjects of his examination in chief is the right, not the mere privilege, of the party against whom he is called, and as a rule, a denial of this right is a prejudicial error. It is only after the right has been substantially and fairly exercised that the allowance of cross-examination becomes discretionary.

That exercise of discretion will not be upset unless it was clearly prejudicial. Whitlock v. United States, 429 F.2d 942 (10th Cir. 1970).

It is therefore incumbent on the appellant to show the limitation on cross-examination restricted either (1) his right of cross-examination by showing a denial of cross-examination on an area properly subject to cross-examination, or (2) a prejudicial limitation on the extent of cross-examination.

An examination of the record fails to reveal any restriction by the trial judge denying cross-examination in an area properly subject to cross-examination, and none is cited by the appellant. All areas of proper cross-examination were available to the defendants. The restriction imposed by the trial court was for the purpose of avoiding repetitious cross-examination, thereby alleviating the protracted length of the trial.

This Court dealt with a similar claim of restriction in Clonce v. United States, 356 F.2d 912 (10th Cir. 1966), cert. denied 384 U.S. 992, 86 S.Ct. 1897, 16 L. Ed.2d 1007. In that case, defense counsel claimed he was restricted in his cross-examination of a government witness.

We stated at 914 that, "The court ruled out a repetitive question which the witness previously had answered clearly. In so doing the court acted within its discretion and its action did not prejudice the defendant."[4] The limitation was neither an improper denial of appellant's cross-examination in a proper area, nor an abuse of discretion in limiting the extent of cross-examination.

Jorgenson next complains that his absence from certain conferences during the trial constitute mistrial in view of no voluntary waiver of his right to be present. He complains of seven such occasions at which he was not present. Four of these occurred on occasions after the jury was excused from the court's presence. Appellant would urge us to infer the removal of himself along with the jury. On the face of the record, we will not make such an inference. The record fails to disclose the appellant's absence at these times, and we will not infer such absence lacking positive proof to the contrary.

Another occasion was a bench conference between the court and a juror at which time the juror disclosed he perhaps knew one of the government's prospective witnesses. This conference was held out of the presence of the defendants and defense counsel. In subsequent discussions immediately afterward, however, the entire conversation was read by the reporter. There is no indication that appellant was not present at this time.

This Court has previously dealt with the rights of a defendant during exchanges between the trial judge and jurors. In Jones v. United States, 299 F.2d 661 (10th Cir. 1962), cert. denied 371 U. S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101, reh. denied 371 U.S. 931, 83 S.Ct. 294, 9 L.Ed. 2d 239 we stated at 662 that "we can let stand no conviction where the defendant was not present at all stages of the proceedings unless the record completely

---

3. Whitlock v. United States, 429 F.2d 942 (10th Cir. 1970).

4. "The court may always exercise reasonable discretion in determining when a

subject has been exhausted and whether continued cross-examination is merely repetition." United States v. Morabette, 119 F.2d 986, 988 (7th Cir. 1941).

negatives any reasonable possibility of prejudice arising from such error." In that case, the trial judge had answered an inquiry of a juror out of the presence of the defendant. We concluded the inquiry related to a question of law, not fact, and was adequately covered by previously given instructions. We further concluded the appellant's presence would not have aided his defense, and that he suffered no prejudice.

■ In Bacino v. United States, 316 F.2d 11 (10th Cir. 1963), cert. denied 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62, we held it unnecessary to determine whether the trial court's private admonition to a juror was a part of the trial, thus requiring the appellant's presence, in view of a showing on the record that no prejudice or harm could have resulted. We can perceive no error in the private conversation between the juror and the trial judge. Any inherent prejudice was obviated by the court reporter's reading of the entire conversation to counsel and defendants. Ample opportunity was afforded for anyone who felt prejudiced thereby to object. There was evidently no prejudice since appellant's counsel expressly stated he had no objection to the juror remaining on the panel.

■ The two remaining conferences of which Jorgenson complains were attended by appellant's counsel. Appellant was clearly not present at these conferences. The first of these conferences took place in a room designated as the lawyers' room. At this conference, the government attorney disclosed his remaining witnesses, as well as a witness not previously listed. A discussion was had on whether the jury should be questioned as to knowledge of these witnesses. In addition, other witnesses who were to be called were discussed as to special problems with each. At the second conference, the government attorney disclosed the result of his investigation of a wife of one of the witnesses who had been observed taking notes of previous testimony. The explanation was

expressly accepted by appellant's attorney.

F.R.Crim.P. Rule 43 requires that the defendant be present "at every stage of the trial * * *." We held in Ellis v. Oklahoma, 430 F.2d 1352, 1355 (10th Cir. 1970), cert. denied 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971), that "a criminal defendant does not have an absolute constitutional right to be a participant in such *in camera* discussions where his lawyer is present * * *." We further held "the question narrows itself to whether the communication itself, as related in the *in camera* proceeding, was actually prejudicial." Our review of the record fails to reveal any prejudice to appellant's cause being occasioned by his absence. We find no reversible error in his absence. Jones v. United States, *supra*.

■ Jorgenson next argues error by the trial court in denying his motion for judgment of acquittal under F.R.Crim.P. Rule 29. He contends the government failed to produce sufficient evidence to sustain a conviction on either the fraud charges or the conspiracy charge. We stated in United States v. Harris, 441 F. 2d 1333, 1336–1337 (10th Cir. 1971), that:

> In deciding a motion for acquittal the trial judge determines whether, considering the evidence in the light most favorable to the government, there is substantial evidence from which a jury might reasonably find that an accused is guilty beyond a reasonable doubt.

Our review of the record at the close of the government's case in chief, at which time the motion was made, disclosed direct testimony of six borrowers implicating Jorgenson in the fraudulent scheme. They were able to identify Jorgenson as one of the men present when the false statement of the purpose for the loan was represented to be proper. Two testified it was Jorgenson who made the representation. In addition, Millard, the defendant against whom the charges were dismissed who testified for

the government, testified to Jorgenson's presence at numerous other loan closings. On the basis of this record, we cannot conclude that the trial judge committed error in the application of Rule 29.

■ Appellant next asserts he was improperly joined with the co-defendants alleging two alternative grounds of misjoinder. He first asserts improper joinder under F.R.Crim.P. Rule 8, contending that neither the defendants nor charges were interconnected by the same transaction or series of transactions. We dealt with the question of joinder of offenses and defendants in United States v. Eagleston, 417 F.2d 11 (10th Cir. 1969). Joinder of offenses is proper under F.R.Crim.P. Rule 8(a) if the offenses are of the same character. Defendants may be joined under Rule 8(b) if they were co-participants in the same act or transaction or series of acts or transactions. Joinder of the multiple defendants in this case is proper only if there is proof of their joint participation in the same act or transaction or series of acts or transactions. If this proof is lacking, there is no room for the exercise of judicial discretion and the court must grant severance.[5] Our review of the record in connection with appellant's previous argument disclosed ample evidence to conclude there was a conspiracy of which Jorgenson was a participant.

■ There was one conspiracy resulting in numerous fraudulent loan applications. Each loan did not constitute a separate conspiracy as appellant argues. The conspiracy charge here extended only to the officers and employees of Manning and to Jorgenson. All the co-conspirators were very familiar with the *modus operandi* of the fraudulent scheme undertaken in each loan. The presence of all the co-conspirators at each loan

closing is not a necessity for a showing of conspiracy among all the conspirators.[6]

This case is not controlled by Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), as urged by appellant. In that case, the borrowers were joined as defendants in a conspiracy charge in which the individual broker was the only individual common to the at least eight separate and independent groups of conspirators. The pattern analogized by the government was "that of separate spokes meeting at a common center." As such, the individuals of the separate groups, having no direct interconnection with the other groups, were not in the status of co-conspirators.

We feel the evidence in this case clearly discloses the indictment included only members of the "hub" or the central group. All within this group are co-conspirators. The government's proof did not show multiple conspiracies as in Kotteakos; therefore it is clearly inapplicable. The proof of one conspiracy of which Jorgenson was a co-participant satisfies the requisite for joinder of defendants under F.R.Crim.P. Rule 8(b).

Jorgenson next argues improper joinder under F.R.Crim.P. Rule 14 claiming an abuse of discretion by the trial court which had a prejudicial effect toward him. He first argues prejudicial joinder on the basis of size and complexity of the trial. He again cites Kotteakos v. United States in support of this argument, asserting the similarities of Kotteakos make it applicable to this case. In Kotteakos, there were eight separate conspiracies proved involving 32 defendants at the outset. The Court, in reversing stated, "The dangers of transference of guilt from one to another across the line separating conspiracies, subconsciously

---

5. United States v. Eagleston, 417 F.2d 11 (10th Cir. 1969).

6. "[T]here is no requirement that every defendant must participate in every transaction in order to have a single conspiracy, as long as they participate in a

common plan or series of transactions." United States v. Hutul, 416 F.2d 607, 619 (7th Cir. 1969), cert. denied 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504, reh. denied, Lombardi v. United States, 397 U.S. 1081, 90 S.Ct. 1519, 25 L.Ed.2d 820.

or otherwise, are so great that no one really can say prejudice to substantial right has not taken place." Kotteakos v. United States, *supra*, at 774, 66 S.Ct. at 1252. The Court expressly did not overrule Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), in which one conspiracy was charged against eight persons. The government's proof in Berger disclosed two conspiracies involving four of the defendants with only one conspirator common to each. The Court, though reversing on other grounds, held the variance in proof did not affect Berger's substantial rights, hence was not fatal to the conviction.

We fail to perceive the high degree of similitude with Kotteakos urged by appellant. In Kotteakos, in basing the distinction between the two cases on the sheer difference in numbers of defendants and conspiracies proven, the Court stated, "Whether or not Berger marks the limit, for this sort of error and case, we are clear that it must lie somewhere between that case [Berger] and this one." Kotteakos v. United States, *supra*, 328 U.S. at 774, 66 S.Ct. at 1252.

■ This case discloses a single conspiracy charged initially against eight co-defendants. After dismissing as to two defendants, Millard and Investment Brokers, Inc., trial to the jury of the remaining six defendants was commenced. The ultimate proof at trial resulted in guilty verdicts against five of the six for a single conspiracy. The jury verdict as to Mitchell was later set aside by the court as Mitchell had previously waived trial by jury, the jury verdict being only advisory to the court.

■ The burden of showing prejudice under F.R.Crim.P. Rule 14 is on the defendant moving for severance.[7] The trial court concluded there was insufficient showing of prejudice to warrant

the severance. Our review discloses a basis for this determination. The granting of motions for severance under F.R. Crim.P. Rule 14 is within the discretion of the trial court, and it is error only when that discretion has been abused.[8]

Affirmed.

---

7. United States v. Harris, 441 F.2d 1333 (10th Cir. 1971).

8. United States v. Kellerman, 432 F.2d 371 (10th Cir. 1970); United States v. Rogers, 419 F.2d 1315 (10th Cir. 1969).