**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Morris SALETKO, Defendant-Appellant.**

**No. 18451.**

United States Court of Appeals,
Seventh Circuit.

Nov. 30, 1971.

Rehearing Denied Dec. 23, 1971.

Certiorari Denied April 3, 1972.
See 92 S.Ct. 1311.

---

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Francis J. Murtha, Jr., Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KERNER, Circuit Judge.

KERNER, Circuit Judge.

Morris Saletko was found guilty by a jury on a single count indictment charging him with the possession of goods known to have been stolen from interstate commerce in violation of 18 U.S.C. § 659.[1] The district court imposed

---

1. 18 U.S.C. § 659 states in pertinent part:
    Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by

fraud or deception obtains from any railroad car, wagon, motortruck, or other vehicle, * * * with intent to convert

a sentence of eight years and the defendant has appealed.

This is defendant's second conviction and appeal arising out of the same incident. Saletko and 17 others were first indicted in 1966 for conspiracy and possession of goods stolen from interstate commerce. He was convicted of both conspiracy and possession and sentenced to 5 years on each count, the sentences to run consecutively. That conviction was reversed by this court, United States v. Varelli, 407 F.2d 735 (7th Cir. 1969). A new indictment charging only the possession of stolen goods was returned in 1969. It is the appeal from the conviction on that charge which is now before us.

Both convictions arose from the 1964 hijacking of a truck belonging to the Spector Freight Systems. The truck contained a shipment of Polaroid film from the Polaroid Corporation in Massachusetts and was destined for the Polaroid plant in Melrose Park, Illinois. The defendant, while not charged with participation in the theft, is alleged to have purchased the film from two of the hijackers. The hijackers, Patrick Schang and Angelo Boscarino, were called as witnesses by the government and their testimony constitutes the principal evidence offered by the government. Saletko's testimony differs materially from that of Schang and Boscarino.

Patrick Schang testified that he was a hijacker by trade and had been convicted of at least six offenses including hijacking, kidnapping, bank robbery, and the interstate transportation of a stolen automobile. Schang admitted that he had participated in the hijacking of the Spector truck on August 23, 1964, and acknowledged his subsequent conviction for that offense. With regard to the defendant Saletko's involvement, Schang testified that he and Boscarino approach-

ed the defendant on August 26, 1964, at the H & H Restaurant in Chicago where he worked as a cashier to discuss the possibility of his buying some of the stolen film. Schang further testified that the defendant indicated that he would be interested and said he would let them know in a day or two.

Schang stated that on Friday, August 28, 1964, Boscarino and another of the hijackers drove the film in a rented truck from Aurora, Illinois, to Chicago. On the way, the rented truck broke down on the Eisenhower Expressway and had to be towed to Chicago. It was taken to the rear of a parking garage next door to the H & H Restaurant where the defendant was present while it was backed into the garage. Schang also stated that the defendant told him to take the truck out the next day and that it would be empty.

About a week later Schang and Boscarino went to the H & H Restaurant where they spoke briefly to the defendant in front of the restaurant and were then taken to the basement where the defendant paid $16,000 for the film. This testimony is partially corroborated by that of Hugh Heraty, a Chicago Police Officer, who testified that on September 8, 1964, at about 12:35 p. m., he observed Schang and Boscarino get out of a car, enter the H & H Restaurant, and have a conversation with the defendant.

The defendant's version of the events is somewhat different. He testified that he lived in Lincolnwood, Illinois, with his wife and two children and had worked as a cashier at the H & H Restaurant for about 13 years. He stated that he knew Schang and Boscarino as customers in the restaurant, but denied that he had ever bought Polaroid film from them or ever paid them $16,000.

Defendant Saletko did acknowledge that he had spoken to Schang in September or October of 1964, but testified that

---

to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express; or

Whoever buys or receives or has in his possession any such goods or chattels,

knowing the same to have been embezzled or stolen;

\*   \*   \*   \*   \*

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; \* \* \*

Schang had come to the restaurant and asked if he would be an alibi witness for him in a trial for bank robbery. The defendant told him, "No, I don't lie for you or anybody else." In addition, Saletko stated that Schang had telephoned him sometime in August of 1964 and asked if he could make arrangements to get a truck into the garage near the H & H Restaurant. The defendant made these arrangements and was present when the truck was backed into the garage, but stated that he neither looked inside the truck nor had knowledge of its contents. He denied that he had had anything further to do with the truck once it was in the garage.

It is clear that this conviction is based upon the jury's assessment of the credibility of government and defense witnesses who gave irreconcilably conflicting testimony. In weighing the defendant's allegations of error, we are mindful of the pervasive role that credibility played throughout this trial. We recognize the danger that even slight trial court error may interfere with the fact-finding function of the jury in cases of this nature; but we are equally aware of the weight which must be given the jury's final assessment of witness credibility where the jury has had the opportunity to both hear the testimony and observe the manner in which it was given.

Defendant urges that he was denied a fair trial by the trial court's restriction of his Sixth Amendment right to confront and cross-examine the government's chief witness, Patrick Schang. This claim is predicated upon the court's refusal to allow defense counsel to question Schang concerning his previous address and his present employment. The basis for this refusal was the trial judge's belief that disclosure of such information would endanger the safety of witness Schang. With respect to the factual basis for such a belief, we note that the trial judge was the same judge who tried the original 17 defendants who were indicted and convicted for con-

spiracy. We must assume that he had intimate knowledge both of the facts of the case and of the people involved. Indeed, the defendant has not questioned the justification for the trial judge's belief that disclosure would endanger the witness.

The question presented for review is whether the disclosure of the witness' prior address and employer would have allowed the discovery of his present address by those who might harm the witness. The defendant argues that no showing was made which would justify the trial court's refusal and that such refusal prevented him from adequately preparing his defense. He believes that access to that information would have allowed him to discover information necessary for the impeachment of a crucial government witness.

In cases of this nature, it is always difficult to set forth the factual basis for the exercise of the trial judge's discretion since that information will frequently strip the witness of the very protection sought. In this case, however, the trial judge based his refusal upon the fact that the witness' present address was no more than two miles from the former. The defendant urges that such a distance renders discovery highly improbable and that the prejudice to the defendant from the refusal to allow disclosure justifies what he considers a slight risk. The trial judge did not agree, noting, "If there is any purpose at all in protecting a witness, it would be completely ridiculous to let you know a place within two miles of where he lived; by tomorrow morning, certain people who may be interested in finding out where he lives would find it out within the course of one day." We are unconvinced that the judge was incorrect in his assessment.

In Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), the Supreme Court set forth the general rule which requires disclosure of addresses of

witnesses.[2]   A specific exception, how-
ever, has become well established and it
is our opinion that this case falls square-
ly within that exception.   Mr. Justice
White noted in his concurring opinion in
*Smith* that the threat of danger to a
witness would excuse the requirement of
disclosure:

> In Alford v. United States, 282 U.S.
> 687, 694, [51 S.Ct. 218, 220, 75 L.Ed.
> 624] (1931), the Court recognized that
> questions which tend merely to harass,
> annoy, or humiliate a witness may go
> beyond the bounds of proper cross-
> examination.   I would place in the same
> category those inquiries which tend to
> endanger the personal safety of a wit-
> ness.

> *Id.* at 133–134, 88 S.Ct. at 751.

Both this and other circuits have follow-
ed the exception carved out by Mr.
Justice White.   United States v. Dad-
dano, 432 F.2d 1119, 1128 (7th Cir. 1970),
cert. denied, 402 U.S. 905, 91 S.Ct. 1366,
28 L.Ed.2d 645 (1971) ;   United States v.
Battaglia, 432 F.2d 1115 (7th Cir. 1970),
cert. denied, 401 U.S. 924, 91 S.Ct. 883,
27 L.Ed.2d 828 (1971) ;   United States v.
Palermo, 410 F.2d 468, 472 (7th Cir.
1969) ;   United States v. Persico, 425 F.
2d 1375, 1384 (2d Cir. 1970), cert. denied,
400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108
(1970) ;   United States v. Baker, 419 F.
2d 83, 87 (2d Cir. 1969), cert. denied, 397
U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271
(1970).

It is noteworthy, though not disposi-
tive, see United States v. Garafolo, 385
F.2d 200 (7th Cir. 1967), rev'd Smith
v. Illinois, 390 U.S. 129, 88 S.Ct. 748,
19 L.Ed.2d 956 (1968), that the re-
striction did not prevent the defend-
ant from extensively exploring the
character of witness Schang.   It was dis-
closed on cross-examination that Schang
was 33 years old and had not been legiti-
mately employed since he was 21;   that
he was a petty thief, burglar, hi-
jacker, bank robber, and car thief,
as well as a twice convicted felon.
In addition, there is no indication that
defense counsel was not free to ex-
amine Schang as to his criminal ac-
tivities within the period for which in-
formation as to his address and employ-
ment was not available.   Schang's sordid
background was exposed to the jury in
substantial detail, and while we cannot
say that the full extent of his disreputa-
bility was revealed, we believe that what-
ever prejudice to the defendant resulted
from the limitations imposed by the trial
judge was outweighed by the necessity of
protecting the witness.

The defendant also argues that he
was entitled to an instruction dealing
with the weight to be given witness
Schang's testimony in light of Schang's
alleged perjury, and that the refusal of
his tendered instruction was reversible
error.   Witness Schang is alleged to have
solicited perjured testimony from the de-
fendant for an alibi defense in a bank
robbery case and suborned perjury when
a police officer gave false testimony at
that trial.   Reliance is placed upon United
States v. Barrasso, 267 F.2d 908 (3d Cir.
1959), in which the Third Circuit
reversed a conviction for failure to in-
struct the jury as to the effect of the
admitted perjury of one of the govern-
ment's principal witnesses.   We believe
that reliance is misplaced.

Schang was cross-examined as to the
defendant's allegation that he sought
perjured testimony and repeatedly denied
that he had ever spoken to Saletko about
the robbery.   Herein lies the distinction

2.  Mr. Justice Stewart stated in *Smith:*
    \*   \*   \*   the petitioner was denied the
    right to ask the principal prosecution wit-
    ness either his name or where he lived,
    although the witness admitted that the
    name he had first given was false.   Yet
    when the credibility of a witness is in
    issue, the very starting point in "exposing
    falsehood and bringing out the truth"
    through cross-examination must necessar-
    ily be to ask the witness who he is and
    where he lives.   The witness' name and
    address open countless avenues of in-
    court examination and out-of-court inves-
    tigation.   To forbid this most rudimentary
    inquiry at the threshold is effectively to
    emasculate the right of cross-examination
    itself.   Smith v. Illinois, 390 U.S. 129, at
    131, 88 S.Ct. 748, at 750.

between this case and Barrasso. The government witness in Barrasso admitted to the jury that he had perjured himself in a previous trial and in that situation we have no difficulty embracing the requirement of an instruction dealing with the effect of prior perjury on a witness' credibility. In the situation of this case, however, no admission was made and the facts affecting the witness' credibility were in dispute. We believe that an instruction on the alleged solicitation of perjury for an entirely different trial would have unduly emphasized an issue collateral to those of defendant's trial and that the general instructions on weighing the credibility of witnesses were sufficient. We note that the court gave multiple instructions on witness credibility [3] and a specific charge regarding Schang:

Now, subject to the other instructions given to you, if you believe that the witness Patrick Schang directly participated in the commission of the offense charged or in the commission of other offenses, his testimony should be closely examined and weighed with great care.

It is our conclusion that this was sufficient to alert the jury to the questionable character of witness Schang.

■ The defendant next directs our attention to Taylor v. United States, 390 F.2d 278 (8th Cir. 1968), and asks us to rule that instructions involving a testifying defendant's self-interest are prejudicial. Such instructions direct the jury's attention to the defendant's vital interest in his own testimony and caution against uncritical reliance upon such testimony. The court in *Taylor* upheld the self-interest instruction but expressed reservations about it. We are equally troubled by self-interest instructions and believe that Judge Blackmun's (now Mr. Justice Blackmun) suggestion [4] that the defendant not be singled out, but rather included in the general instructions on witness credibility is a sounder

---

3. Now, in this case it is your province to determine which witnesses you are going to believe. You determine the credibility of each witness and the weight to be given to his testimony. In weighing the testimony of each witness you should consider his relationship to the Government or to the defendant; the witness' interest, if any, in the outcome of the case, his manner while testifying, his candor, his fairness, his intelligence and the extent to which he has been corroborated or contradicted, if at all, by other credible evidence.

Now, if you believe that any person who has taken the stand, any witness, has wilfully sworn falsely to a material fact in the case, you may disregard his testimony in whole or in part, except insofar as it may have been corroborated by other credible evidence.

Now, the testimony of a witness may be discredited or impeached by a showing that he previously made statements which are inconsistent with his present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to establish the truth of the statements.

Now, it is your province to determine the credibility, if any, to be given to the testimony of a witness who has been impeached. The testimony of a witness may be discredited or impeached by a showing that he has been previously convicted of a felony. Prior conviction does not render a witness incompetent to testify, it merely reflects on his credibility. It is your province to determine what weight, if any, should be given to such prior conviction as impeachment.

4. We do not hesitate to observe, however, that the continuing and frequent attack on an instruction of this kind indicates that its use leaves defense counsel with a troubled mind. We suspect that this discomfort would be alleviated if the defendant were included by reference in the court's general instructions as to all witnesses. We would prefer that the defendant not be singled out. His interest is obvious to the jury. A general reference, such as "including the defendant", should suffice. Or the simple instruction proposed by Mathes & Devitt, Federal Jury Practice and Instructions, § 9.12 (1965), namely, "A defendant who wishes to testify, however, is a competent witness; and the defendant's testimony is to be judged in the same way as that of any other witness", might be considered for use and should withstand attack of the kind present here. Taylor v. United States, 390 F.2d 278, at 285.

procedure. However, we, like the Eighth Circuit in *Taylor,* believe that the self-interest instruction which was given was not so harmful to the defendant in this case as to warrant reversal. The Supreme Court has upheld far stronger instructions on defendants' self-interest in testifying. In Reagan v. United States, 157 U.S. 301, 304, 15 S.Ct. 610, 611, 39 L.Ed. 709 (1895), the Court found unobjectionable an instruction which directed the jury's attention to the deep "personal interest" of the defendant and the strong temptation "to color, pervert, or withhold the facts." This court and those of other circuits have continually upheld instructions on this subject. United States v. McCarthy, 295 F.2d 356, 358 (7th Cir. 1961); United States v. Marshall, 266 F.2d 92, 95 (7th Cir. 1958); Nelson v. United States, 415 F.2d 483, 487 (5th Cir. 1969); Taylor v. United States, *supra;* Rimerman v. United States, 374 F.2d 251, 255–256 (8th Cir. 1967), cert. denied, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); Foley v. United States, 290 F.2d 562, 569 (8th Cir. 1961), cert. denied, 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88 (1961). On the facts of this case, we are not inclined to depart from these precedents.

The defendant complains, additionally, of prejudice from certain remarks of the trial judge which are said to have conveyed to the jury the judge's disbelief of the defendant's testimony and from statements made by the prosecutor in closing argument which are urged to have amounted to the prosecutor vouching for the credibility of this witness. We have examined the record closely in these areas and find that a reading within the full context reveals no error in these statements.

■ Finally, we turn our attention to the question of defendant's sentence. As noted above, the defendant was convicted for the same offense in 1967 and sentenced to 5 years on the possession count. This court reversed that conviction. The case was retried and a second conviction obtained. An 8 year sentence was imposed after the second conviction. We are now asked to review that sentence.

The Supreme Court decision in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), governs the authority of a trial court to impose a more severe sentence upon a defendant who has successfully appealed the first sentence only to be reconvicted. While the majority in *Pearce* finds no absolute constitutional prohibition under the equal protection and double jeopardy clauses against imposing harsher sentences upon reconviction,[5] the court found that the due process clause places significant limitations upon that power:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant

5. Mr. Justice Douglas and Mr. Justice Marshall, concurring, conclude that the double jeopardy clause absolutely prohibits an increased sentence:

> Although I agree with the Court as to the reach of due process, I would go further. It is my view that if for any reason a new trial is granted and there is a conviction a second time, the second penalty imposed cannot exceed the first penalty, if respect is had for the guarantee against double jeopardy.

*Id.* at 727, 89 S.Ct. at 2089.

occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 725–726, 89 S.Ct. at 2080–2081.

In attempting to follow the dictates of *Pearce,* the trial judge set forth in the record the factual basis which he believed justified the longer sentence. Essentially, two factors were relied upon: first, that the defendant was impeached by his testimony at the previous trial and, second, that his testimony concerning Schang's solicitation of perjury was a fabrication on the part of the defendant. With respect to the impeachment of the defendant, we do not believe that sufficient discrepancies were revealed to warrant the additional sentence. The second trial occurred three years after the first and it is understandable that defendant was unable to recall the events in the same detail as he had at the first trial. When the defendant was confronted with his prior testimony, he acknowledged that his memory of the details was not good but admitted that if he had testified to something in the prior trial, it was correct. Similarly, the defendant's allegation of Schang's solicitation, even if perjurious, constituted no new fact upon which a more severe sentence could be predicated since that same testimony was given at the first trial. No, "identifiable conduct," *Pearce* at 726, 89 S.Ct. 2072, subsequent to the first sentencing having been found upon which the increased sentence could be based, the mandate of *Pearce* was not complied with. In the exercise of our supervisory powers, we have concluded that under the guidelines in *Pearce* a sentence of more than five years would be excessive and should not be allowed to stand.

For these reasons, the conviction is affirmed and the cause is remanded to the district court for re-sentencing in conformance with this opinion.

Affirmed in part, reversed in part, and remanded.