**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James John MALASANOS, Defendant-
Appellant.**

**No. 71–1139.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1972.

Decided Jan. 22, 1973.

John P. O'Brien, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Jeffrey Cole, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

PER CURIAM.

This is an appeal from the conviction by a jury of James Malasanos for violating 18 U.S.C. § 2113(a),[1] attempted bank robbery. The trial court denied defendant's motions for judgment of acquittal and for a new trial.

Appellant's primary contention is that the Government proved "too much." The indictment had charged that Malasanos did by force, violence, and intimidation, knowingly and willfully, attempt to take $1,000,000 from employees of the First National Bank of Chicago, the deposits of which were insured by the Federal Deposit Insurance Corporation. Malasanos maintains the proof showed he had completed the robbery and, thus, that he was not guilty of an attempted "taking."

■ The Government argues that if we were to rule as a matter of law that this was a successful bank robbery, prosecutors would face a pleading dilemma reminiscent of the writs at common law. We agree that neither common sense nor precedent supports success as a defense to a charge of attempt under the federal bank robbery statute.[2]

United States v. Baker, 129 F.Supp. 684 (S.D.Cal.1955), on which Malasanos principally relies, did not actually involve the question of whether a successful bank robbery would contain no element of attempt, as the attempt there was admittedly unsuccessful. To the extent that dicta in *Baker* might seem to suggest that in the case of a successful attempt an indictment could not be predicated on the attempt only, we decline to agree. Other cases the defendant cites are either factually distinguishable or involve interpretations of state law. We instead find a persuasive analogy in

---

1. 18 U.S.C. § 2113(a) provides in part:
   "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . [s]hall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

2. The Government's contention that success is not a defense to a charge of attempted robbery is an alternative argument. The Government does not concede that the robbery was consummated:
   "[B]y no stretch of the imagination was this a successful bank robbery. . . . [T]here is ample evidence from which the jury could conclude that the bank robbery had failed and that defendant was guilty of the attempt charged in the indictment."

   Further, to the extent that this contention of Malasanos might be typified as a semantical technicality, it may well be answered that he was indicted for attempting to take $1,000,000 whereas the most he had in his possession at any time was the sum of $300,000.

those cases holding that a defendant's actual entry and commission of a crime is no defense to a charge of entry with intent to commit a crime, 18 U.S.C. § 2113(a), second paragraph. See, *e.g.*, Smith v. United States, 356 F.2d 868 (8th Cir. 1966), cert. denied, 385 U.S. 820, 87 S.Ct. 44, 17 L.Ed.2d 58; La Duke v. United States, 253 F.2d 387 (8th Cir. 1958). We also note that Malasanos was not charged with both attempted robbery and robbery and that he did not receive impermissible consecutive sentences for such related offenses. *See* Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

■ In conjunction with his success-as-a-defense argument, Malasanos asserts that the evidence which allegedly showed completion was irrelevant to the attempt charge and that its admission was so prejudicial as to require reversal of the judgment of conviction. We find no merit in this contention. The peculiar events of March 2, 1970, cannot be bifurcated as defendant urges. Further, we have previously held proper the admission of evidence of crimes other than that charged in the indictment where the crimes are so intertwined that proof of one involves the other, explains the pertinent circumstances, or helps establish an element of the crime charged. *E.g.*, United States v. Fidanzi, 411 F.2d 1361 (7th Cir. 1969), cert. denied 396 U.S. 929, 90 S.Ct. 265, 24 L.Ed.2d 227; United States v. Wall, 225 F.2d 905, 907 (7th Cir. 1955), cert. denied, 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816 (1956); United States v. Sebo, 101 F.2d 889, 891 (7th Cir. 1939).

■ Malasanos also claims reversible error in three of the court's instructions and in the failure to give one instruction. The claimed omission was to give an instruction that the evidence of the "other crime" should be limited to the issue of intent. Malasanos made no objection to the omission nor was such a limiting instruction tendered. Also no objection was made to one of the claimed erroneous instructions which

was given, although defense counsel did specify objections to a number of the other instructions. The particular instruction here involved was tendered by the Government and included the term "taking" as well as the word "attempting." The latter word, of course, has no place in the instruction but obviously was there by inadvertence. The indictment itself was read to the jury·and correctly stated the issue of law. Further, as we have hereinbefore indicated, the broader term "taking" includes as one of its elements the "attempt."

As to both the omission and the Government's tendered instruction, we are of the opinion that Rule 30, Fed.R.Crim.P., controls. We are not impressed that either matter was plain error within the meaning of Rule 52(b), Fed.R.Crim.P. The claimed errors not having been presented to the trial court will not here be the basis of reversal.

The other challenged instructions were taken verbatim from the La Buy manual, 33 F.R.D. 523 (1963). Instruction 6.06–2 treats impeachment by a prior conviction for a felony, and instruction 6.09 deals with a defendant's testimony. Malasanos acknowledges that this court and other courts have approved these particular instructions. However, he maintains that in his case they were prejudicial.

■ The impeachment instruction provided as follows:

"The testimony of a witness may be discredited or impeached by showing that he has been convicted of a felony. Prior conviction does not render a witness incompetent to testify, it merely reflects on his credibility. It is your province to determine what weight, if any, should be given to such prior conviction as impeachment."

Malasanos contends that the instruction "tended to distort the consideration the jury would have been inclined to give [the defendant's] prior conviction." He argues that because his main defense was lack of the required intent, it was essential that his testimony receive max-

imum credibility. Malasanos further complains on appeal that the conviction was 25 years old and of limited probative value.

Defense counsel at trial said he did not "mind if the Government argues this point" but claimed that the instruction on prior conviction evidence gave it special weight more than other impeachment evidence. We are not clear to what the "other impeachment evidence" referred. We are not aware of any direct effort to impeach the defense testimony of Malasanos other than as it may have been inherently incredible. We are not unmindful of the ten-year limitation specified in Rule 609(b) of the proposed Federal Rules of Evidence, transmitted to the Congress by the Supreme Court by order of November 20, 1972.[3] Further, the testimony was not put before the jury in the form of an impeaching question on cross-examination but was brought in the case as a part of the direct testimony of Malasanos himself. This apparently was a part of the trial strategy on the defense of lack of intent. We might under present-day approaches to the matter of impeachment by evidence of prior criminal conviction have a difficult question, if the Government had brought this matter in on cross-examination for impeachment purposes, as to whether the probative effect of a 25-year-old conviction might not be so minimal as to be nonexistent particularly since the prior conviction was for armed robbery which some juror or jurors might discern, in view of the nature of the present charge, as showing a tendency on the part of Malasanos to engage in such activities. Here, however, the defendant brought the matter into full jury view. There was no place for a limiting instruction because the fact of impeachment had not been brought out for impeachment purposes. The challenged instruction is, however, sugges-

tive of the fact that the prior conviction would not be evidence of the commission of the crime here involved but "merely reflects on [the defendant's] credibility." Further, the defendant's objection at the trial was not based on the asserted minimal probative value of the conviction for impeachment. Finally, the instruction does not say that any weight whatsoever need be given to the impeachment potential of the conviction but only that the jury has the province to determine "what weight, *if any*," should be given to it.

■ The importance of Malasanos's testimony to his defense is also the ground for his objection to the instruction relating to a defendant as a witness:

> "A defendant who wishes to testify is a competent witness, and his testimony should not be disbelieved merely because he is the defendant. However, in weighing his testimony, [the jury] should consider the fact that the defendant has a vital interest in the outcome of this trial."

Those decisions upholding the giving of this or a similar instruction have not limited its applicability to situations where the defendant's testimony is of no moment. See, *e.g.*, United States v. Sullivan, 329 F.2d 755 (2d Cir. 1964), cert. denied, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054; Foley v. United States, 290 F.2d 562, 569–70 (8th Cir. 1961), cert. denied, 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88; United States v. Marshall 266 F.2d 92 (7th Cir. 1959). *Also see* Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709 (1895). We fail to understand why such a cautionary instruction was proper in those cases but not in Malasanos's case. United States v. Kahn, 381 F.2d 824 (7th Cir. 1967), cert. denied, 389 U.S. 1015, 88 S. Ct. 591, 19 L.Ed.2d 661, reh. denied, 392 U.S. 948, 88 S.Ct. 2272, 20 L.Ed.2d 1413

3. The proposed Rules, by their terms, are not to be effective until July 1, 1973; however, this court in United States v. McCarthy, 445 F.2d 587, 590 (7th Cir. 1971), indicated that the proposed Rules should be used as guidelines by district courts. Nevertheless, the present case was tried some seven months prior to *McCarthy* and did not involve a direct effort to impeach by conviction evidence.

**646**

(1968), upon which defendant relies, involved a long, general credibility instruction which referred to the fact that defendant's testimony had been contradicted by Government witnesses. This court found no prejudice in the giving of the instruction even though in *Kahn* the challenged instruction was much longer and more detailed on the question of credibility than the standard La Buy instruction given in the present case.

▉ The final issue on this appeal is whether the district court erred in not granting Malasanos a hearing on his *pro se* motion, filed prior to trial, to obtain a new court-appointed attorney. Malasanos states he did not trust the attorney assigned to him and thus did not disclose his story completely to him. Consequently, the attorney "did not present [defendant's] *true* defense" at trial, and Malasanos was allegedly thereby deprived of his right to effective assistance of counsel.

▉ We find no reversible error. The defendant's motion had been deferred pending a competency examination ordered on April 8, 1970. Malasanos argues that even though the motion for a different attorney had not been ruled on when presented, it should have been the subject of a ruling at some time. Upon his return from the examination, Malasanos did not reassert his request, and, at trial, he made no objection to his representation. Failure to renew a motion would not necessarily constitute a waiver or abandonment. Here, however, we do not need to reach that question because the record indicates that the defendant had, subsequent to his examination, come to an agreement with his attorney and no longer wished a different lawyer. In July 1970, Malasanos in open court signed a stipulation which stated that the court-appointed attorney "has had numerous conversations with the defendant since his arrest, and in these conferences the defendant has cooperated with him and is capable of assisting in his defense." At the end of the trial, the attorney did tell the court that Malasanos wanted a new lawyer, but when the court asked Malasanos if there was anything he wished to say, the defendant answered, "I want to wait for a time before I decide on this. . . . We had discussed it, but I am going to wait." Although he claims he was always unhappy with the attorney assigned him, Malasanos accepted representation by him and, in effect, abandoned the motion for a new attorney. The court did not therefore commit reversible error by failing to hold a hearing on the motion. Further, contrary to defendant's assertion, we find no basis in the record for determining that the representation of Malasanos by his counsel was less than adequate.

Finally, from the point of view of guilt of the crime charged, we note that Malasanos in his testimony stated that the Government witnesses had been substantially accurate in relating his activities at the bank. These, in brief, were that he had appeared at the executive offices of a major Chicago bank with a suitcase in which he stated there were explosives which he could and would detonate unless he was given $1,000,000 in cash. Although he was eventually given part of that amount, he was subdued before he could leave the 9th floor.

The conviction of James John Malasanos is therefore affirmed.

Affirmed.