THOMPSON, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–059–CR. Argued February 8, 1978.—Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 467.)

For the plaintiff in error the cause was argued by *Glenn Cushing,* clinical intern, with whom on the brief were *Howard B. Eisenberg,* state public defender, and *Richard M. Sals,* assistant state public defender.

For the defendant in error the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS C. J. The defendant contends (1) that the search of his automobile and seizure of a .38 caliber revolver between the seats, and money in the glove com-

partment and trunk was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution; (2) that admission of the .38 caliber revolver in evidence was erroneous and prejudicial; and (3) that giving of an instruction allowing the jury to consider the defendant's interest in the outcome of the trial denied him a fair trial under the Fourteenth Amendment.

At approximately 6:25 p.m., on June 25, 1974, a Clark gasoline station was robbed in the city of Milwaukee. Police Sergeant Kenneth Bushek received a radio dispatch announcing the armed robbery and describing the robber as a young black male, six feet one, 170 pounds, with bushy hair, bib overalls, tennis shoes, and a multicolored shirt. At 8:22 p.m., that night, in the 1600 block of North 3rd Street, Sergeant Bushek stopped a car driven by a person matching the description. The driver was Robert Lee Thompson, the defendant in this case. Although Thompson's chest was bare, Sergeant Bushek noted the hair style, size, and bib overalls of the defendant. Sergeant Bushek ordered the defendant out of of the car and observed a multicolored shirt on the seat.

Shortly after removing Thompson from the car, Sergeant Bushek placed him under arrest for the Clark robbery, but Bushek could not remember if he had placed him under arrest before or after finding a revolver in the car. In any event, Thompson was in custody. Bushek immediately told him that he was a suspect in the robbery.

At about the same time that the weapon was discovered, other police officers began arriving on the scene. At a minimum, two other officers were present from that time on. Bushek then searched the car. He found $82 in currency and $10 in coins in the glove compartment, and $710 wrapped in brown paper folded inside a jacket in the trunk. He unlocked the trunk with defendant's keys. There was no consent to the search. The contents of the vehicle were inventoried and it was towed away in police custody.

Three days before, on June 22, 1974, at approximately 4 p.m., a tavern in Milwaukee, owned by James Hering, was robbed. On June 26, 1974, Detective James Mamayek asked Hering to examine six photographs. After examining the pictures for about five minutes, Hering picked defendant Robert Lee Thompson as the robber. Later that day Hering attended a lineup and again picked out Thompson. Thompson's attorney was present at all times during the lineup.

A criminal complaint was filed on June 27, 1974, charging Robert Lee Thompson with the June 22nd armed robbery of Hering's tavern contrary to sec. 943.32(1)(b) and (2), Stats.

On May 2, 1975, a *Wade-Gilbert* type hearing was conducted to test the validity of the identification procedure. Detective Mamayek testified as to the procedure involved. Then James Hering testified that he had picked out defendant Thompson from both the photographs and the lineup. During the hearing Hering was shown photographs of the lineup in which Robert Lee Thompson was Number 4, and after informing the court that he had chosen Number 4 at the original identification, Hering pointed out Number 3 instead. However, the photographs shown to him at that time were side views and when shown the front view he again picked Number 4, the defendant Thompson. The court held that the lineup procedure was constitutionally antiseptic.

Trial by jury was commenced on May 19, 1975. James Hering identified defendant Thompson in court as the robber of his tavern. He then testified he was alone when Thompson entered and asked him for change for a five dollar bill. Hering took the bill and went to the cash register. Thompson said, "This is it," and Hering saw he was holding a gun. Hering described it as an automatic pistol and he noted that Thompson cocked it by sliding the chamber back. He stated that he was familiar with handguns to the point of being able to distinguish revolvers from automatics. Thompson

ordered Hering to lie down. Hering did so. Then Thompson took $190 cash and fled.

The state then called Sergeant Bushek as a witness. The defense demanded a suppression hearing because it had not been informed that the state intended to call Bushek. The defense noted that the revolver found in Thompson's car was irrelevant because it was clear that an automatic was involved in the Hering robbery. The prosecution replied that it was relevant: ". . . the fact that he carries a gun again shows a predisposition toward violence." The defense moved for mistrial. The motion was denied.

The defense then made an oral motion to suppress any evidence relating to the weapon found in Thompson's car on the grounds that the gun was immaterial to the charge of armed robbery on June 22, 1974, because the gun involved there was an automatic and that the search of Thompson's car was contrary to defendant's Fourteenth Amendment rights. Defense counsel contended that any probative value which this evidence might possess was outweighed by the prejudicial effect of allowing the jury to hear it.

A hearing was held outside the presence of the jury and Bushek recounted the facts and circumstances of the June 25, 1974 arrest. The motion to suppress was denied. The defense again moved for mistrial; again the motion was denied.

Sergeant Bushek then testified before the jury to the effect that he had arrested the defendant and found the revolver and money in his car. He was questioned extensively on the difference between automatics and revolvers. He stated that the pistol found in the car was a revolver. He noted that automatics are cocked by pulling back a rectangular slide, while there is no such slide on a revolver. He demonstrated that a revolver has a cylinder and is cocked by pulling back a hammer.

The state's case concluded with the testimony of Detective Mamayek on the identification procedures.

The defense was primarily based on an alibi. Thompson's girlfriend, Karen Louise Abts, testified that she and the defendant had spent the entire day together—from nine in the morning until midnight. The defendant gave the same account as to his whereabouts. He further stated that he had earned the money as a barber in Indiana and had brought it to Milwaukee because he was planning to buy some clothes. He testified that he had owned the revolver for six years.

The defense objected to the giving of Wisconsin Jury Instruction—Criminal 310 on self-interest of a defendant testifying on his own behalf. The court overruled the objection and the instruction was given.

On May 22, 1975, the jury returned a verdict finding Robert Lee Thompson guilty of the armed robbery of Hering's Tavern. The court sentenced Thompson to a term of eleven years and one month to run concurrently with a sentence imposed in another case.

The search of the automobile was without a warrant. The defendant contends the search was unreasonable and does not fall within any of the recognized exceptions to the constitutional warrant requirement. Some of the exceptions are consent to search, search incident to arrest, a probable cause search, an exigent circumstance search, a police inventory search, and an automobile exception to warrantless search.

Clearly there was no consent to the search nor does the state rely upon it being a search incident to lawful arrest or an exigent circumstance search. The state defends the warrantless search contending it was justified either as an automobile search based upon probable cause or a police inventory search.

The state seeks to justify the search upon the ground that it was permissible under the inventory exception. The United States Supreme Court has held that inventory searches pursuant to "Standard police procedures"

are reasonable and permissible. However, the purpose of the search is not to discover evidence but to secure or protect the car and its contents.[1] In *Warrix v. State,* 50 Wis.2d 368, 376, 184 N.W.2d 189 (1971), this court expressed the reasons underlying inventory searches:

"Many times claims against the police have been made by the accused that personal property has disappeared from his car while he and the car were in police custody. To protect the police from such claims, a custodial search and inventory may be made of the personal property in a car which can be easily removed." *See also State v. McDougal,* 68 Wis.2d 399, 406, 228 N.W.2d 671 (1975).

Although Sergeant Bushek testified that it was standard police operating procedures to inventory an automobile whose driver has been arrested, before towing it, it is apparent that this was not an inventory search. When asked why an inventory is conducted prior to towing, Bushek replied:

"For protection and safeguarding of evidence."

And in describing the operating procedure, Bushek said,

"Any time a crime is committed and a vehicle is used and it's going to be used as evidence, the vehicle is towed and kept under proper guidelines."

The purpose of a custodial or inventory search is to take note of the contents in the car when it is impounded by the police. The instant search had nothing to do with protecting the car or its contents. The search had the specific aim of obtaining evidence, not inventorying contents. The aim of this search was to find and safeguard evidence, not to protect the owner's property or to protect the police against fraudulent claims.

In its brief the state further contends that because Thompson had been involved in a robbery, Bushek acted reasonably in searching in the glove compartment and

---

[1] *South Dakota v. Opperman,* 428 U.S. 364, 372–73 (1976).

trunk. This has no relevancy whatever in an inventory search; an inventory search is not based upon probable cause and does not seek to discover evidence.

It is apparent that the "inventory" involved here was not a disinterested cataloging of the car's contents. The motivation here was to discover evidence and as such the search cannot be justified as an inventory search. This is not to say that a valid inventory search could not have been conducted after the arrest of the defendant and impounding of the vehicle.

The automobile exception is based primarily on the case of *Carroll v. United States*, 267 U.S. 132 (1925). The United States Supreme Court noted that automobiles presented a unique problem in regard to the constitutional warrant requirement because of their mobility. *Carroll* and the line of cases which came afterward established two criteria which must be met before the automobile exception applies—there must be probable cause to believe that the vehicle contains evidence and there must be some exigent circumstances which warrant the search.

The defendant's position is that neither of these requirements are met. On the question of probable cause, Sergeant Bushek had been notified of an armed robbery. He was given a description of the robber and this description matched defendant Thompson. Because Sergeant Bushek stopped Thompson's car only two hours after the reported armed robbery, it was reasonably probable that his vehicle would contain the weapon used in the robbery and fruits of the crime. Defendant contends that the fact that he matched the description of the robber is not enough. He avers that without any knowledge of the vehicle involved, Bushek did not have sufficient information to obtain probable cause for the search. The court has stated that:

"Probable cause is not '. . . that quantum of evidence which might later support a conviction, rather it is ". . .

that quantum of evidence which would lead a reasonable police officer to believe that the defendant had probably committed a crime." ' " *Jones (Hollis) v. State,* 70 Wis.2d 62, 71, 233 N.W.2d 441 (1975).

██

Based on the fact that Thompson fit the broadcast description, and also on some furtive and suspicious movements which he made prior to being ordered from his car, Sergeant Bushek could have reasonably believed that Thompson was the robber.

The defendant next contends that because he was under arrest, and because his car was immobile and about to be towed, there were no exigent circumstances which supported the search; there was no danger that the car might leave the jurisdiction or that anyone might tamper with or remove evidence.

██

Although this court in *State v. McDougal,* 68 Wis.2d 399, 410, 228 N.W.2d 671 (1975), cited *Coolidge v. New Hampshire,* 403 U.S. 443 (1971), to the effect that " 'the word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears,' " it is apparent from the recent decisions of the United States Supreme Court that the exigency requirement of the automobile exception has been weakened and that only a slight showing will suffice.

In the very recent case of *United States v. Chadwick,* 433 U.S. 1, 53 L. Ed.2d 538, 549, 97 S. Ct. 2476 (1977), the court summarized the automobile exception and its rationale:

"[T]his Court has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts.  Carroll v. United States, 267 US 132, 69 L Ed 543, 45 S Ct 280, 39 ALR 790 (1925); Preston v. United States, 376 US, at 366–367, 11 L Ed2d 777, 84 S

Ct 1975 (1970). See also South Dakota v. Opperman, 428 US, at 367, 49 L Ed2d 1000, 96 S Ct 3092.

"Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained 'warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non-existent.' Cady v. Dombrowski, 413 US 433, 441–442, 37 L Ed2d 706, 93 S Ct 2523 (1973); accord, South Dakota v. Opperman, supra, at 367, 49 L Ed2d 1000, 96 S Ct 3092; see Texas v. White, 423 US 67, 46 L Ed2d 209, 96 S Ct 304 (1975); Chambers v. Maroney, supra; Cooper v. California, 386 US 58, 17 L Ed2d 730, 87 S Ct 788 (1967).

"The answer lies in the diminished expectation of privacy which surrounds the automobile:

" 'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects . . . It travels public thoroughfares where both its occupants and its contents are in plain view.' Cardwell v. Lewis, 417 US 583, 590, 41 L Ed2d 325, 94 S Ct 2464, 69 Ohio Ops2d 69 (1974) (plurality opinion).

Other factors reduce automobile privacy. 'All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways.' Cady v. Dombrowski, 413 US, at 441, 37 L Ed2d 706, 93 S Ct 2523. Automobiles periodically undergo official inspection, and they are often taken into police custody in the interests of public safety. South Dakota v. Opperman, 428 US, at 368, 49 L Ed2d 1000, 96 S Ct 3092."

We conclude, under the circumstances of this case, the officer had probable cause to search the defendant's vehicle without a warrant.

At trial James Hering testified that the weapon used in the robbery was an automatic, not a revolver. His description of the gun, buttressed by Sergeant Bushek's

testimony as to the significant differences between revolvers and automatics, demonstrated that the gun used in the robbery clearly was an automatic. Accordingly, defendant Thompson contends that it was prejudicial error to allow evidence of his possession of a revolver to reach the jury.

In *Moore v. Illinois*, 408 U.S. 786, 799–800 (1972), the United States Supreme Court held that no federal due process problems were present in a case where the defendant's possession of a 16-gauge shotgun was admitted in evidence although the shooting admittedly involved a 12-gauge shotgun. An important reason for this result was that during closing arguments the prosecutor made it clear that the 16-gauge shotgun was not the gun used in the shooting, but was being presented only to show that the killer and another "were 'the kind of people that used shotguns.' " The court noted, however, that this did not mean that the evidence might not be improper under state law.[2]

The cases dealing with other gun evidence are almost uniform in holding that it is error to introduce possession of a gun which was not involved in the crime.

"When the specific type of weapon . . . is not known, it may be permissible to admit into evidence weapons found in the defendant's possession some time after the crime that could have been the weapons employed. There need be no conclusive demonstration that the weapon in defendant's possession was the murder weapon. [Cases cited.] When the prosecution relies, however, on a specific type of weapon, it is error to admit evidence that the other weapons were found in his possession, for such evidence tends to show, not that he committed the crime, but only that he is the sort of person who carries deadly weapons." *People v. Riser*, 47 Cal.2d 566, 577, 305 P.2d 1 (1956). *See also: People v. Gilbert*, 63 Cal.2d 690, 408 P.2d 365 (1965) ; *State v. Krebs*, 341 Mo. 58, 106

[2] *See also United States v. Stone*, 471 F.2d 170, 172 (7th Cir. 1972), certiorari denied 411 U.S. 931 (1973).

S.W.2d 428 (1937) ; *United States v. Reid,* 410 F.2d 1223 (7th Cir. 1969) ; *State v. Harrison,* 253 Ore. 489, 455 P. 2d 613 (1969).

The state concedes that the trial court erred. However, it contends that the error was harmless under sec. 817.37, Stats., in that it did not affect the substantial rights of the defendant.[3] The burden rests on the defendant to show that the error was prejudicial. *Kalb v. Luce,* 239 Wis. 256, 260, 1 N.W.2d 176 (1941). The defendant cites *United States v. Reid, supra,* for the proposition that other gun evidence is consistently regarded as prejudicial. However, two California cases, *People v. Riser, supra,* and *People v. Gilbert, supra,* indicate that such error may be harmless.

The present harmless error rule in this state is set forth in *Wold v. State,* 57 Wis.2d 344, 356–57, 204 N.W. 2d 482 (1973) :

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *See Harrington v. California* (1969), 395 U.S. 250, 89 Sup. Ct. 1726, 23 L. Ed.2d 284. This test is based on reasonable probabilities. Although the court in *Fahy v. Connecticut* (1963), 375 U.S. 85, 84 Sup. Ct. 229, 11 L. Ed.2d 171, had talked about reasonable possibilities, *Harrington* shows the court no longer in fact uses that standard. A possibility test is the next

---

[3] "817.37 *Judgments; application to reverse or set aside; new trial; reversible errors.* No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

thing to automatic reversal. In determining guilt 'beyond a reasonable doubt,' the human mind should not work on possibilities, but on reasonable probabilities."[4]

In this case, under the *Wold* test and sec. 817.37, Stats., we conclude the error was prejudicial and a new trial should be granted.

■

The evidence supporting the conviction in this case was based almost entirely upon the testimony of the victim of the tavern armed robbery. That testimony standing alone is sufficient to justify the conviction. However, our inquiry must not stop there. Thompson's defense was alibi. He testified, corroborated by his lady friend, that he was elsewhere on the day and at the time of the offense. Mr. Hering, the victim, did identify the defendant as the robber from photographs, at a lineup and at trial. He was, however, somewhat confused as to the photographic evidence at the *Wade-Gilbert* suppression hearing and his explanation at trial. In view of the plausible alibi testimony, the identity issue became crucial. We cannot conclude with any degree of certainty that the jury was uninfluenced by the erroneous admission of the wrong firearm. We do believe receipt of this evidence was prejudicial and affected a substantial right of the defendant, thereby compelling a new trial.

---

[4] The reasonable probabilities rule was recently challenged in the concurring opinion of HEFFERNAN, J., in *Kelly v. State*, 75 Wis.2d 303, 321, 249 N.W.2d 800 (1977). This concurring opinion states:

"The *Wold* rule gives no recourse against errors which may well have a substantial impact upon the jury's finding of guilt. The philosophy of *Wold* is simply that a person who may properly be found guilty under admissible evidence cannot be deprived of a fair trial because of error, even though that error contributes substantially to the finding of guilt. *Wold*, erroneously I believe, places the emphasis upon the admissible evidence rather than upon the alleged error. Attention should be focused on whether the error prejudices the rights of the defendant."

The defendant contends it was error to give Wisconsin Jury Instruction, Criminal 310.[5] The defendant relies primarily on two federal cases and an Iowa case. The federal cases, *Taylor v. United States*, 390 F.2d 278 (8th Cir. 1968), and *United States v. Saletko*, 452 F.2d 193 (7th Cir. 1971), do not hold that self-interest instructions impermissibly single out a defendant. Rather, they indicate that it would be better if courts did not give such instructions but that, absent a manifest showing of injustice, such instructions will be found unobjectionable.

The Seventh Circuit in *Saletko* pointed to the United States Supreme Court's decision in *Reagan v. United States*, 157 U.S. 301, 304 (1895). There the instruction

---

[5] "310 *Defendant as Witness in Own Behalf*

"Under the law a defendant is a competent witness in his own behalf, and you should not discredit his testimony merely because he is charged with a crime. The defendant has given his testimony, and you are the judges of the weight which ought to be attached to it. His testimony should be weighed as the testimony of any other witness; considerations of interest, appearance, manner, and other matters bearing upon credibility apply to the defendant in common with all witnesses. He is directly interested in the result of the trial. In determining the weight to be given to the testimony of the defendant, it is proper for you to take such interest into consideration. You are to give to his testimony such weight as under all of the circumstances you think it is entitled to. You have a right to consider his situation, his interest in the result of the trial, the temptation which may exist under the circumstances to testify falsely, and everything appearing in the case bearing upon his credibility, and to give to his testimony just such weight as you think it is entitled to, no more and no less. His testimony is to be considered with all of the other evidence in the case. Likewise, you should consider to what extent, if any, any other witness on this trial may have an interest in the result of the trial or in testifying in the manner in which he or she did, and you are to consider to what extent, if any, such interest has any influence upon his or her testimony. You should apply the same tests as to credibility and weight to the testimony of every witness, sworn on the trial, including the defendant."

was similar to Wis J I—Criminal 310 and was upheld. Specifically, the *Reagan* instruction noted that where a defendant is a witness, the temptation would be strong " '. . . to color, pervert, or withhold the facts.' " Since *Saletko,* the Seventh Circuit has refused on at least one occasion to reverse on grounds that the defendant's self-interest instruction is prejudicial. *United States v. Mala-sanos,* 472 F.2d 642, 645 (7th Cir. 1973).

The Iowa case, *State v. Bester,* 167 N.W.2d 705 (1969), reaches an opposite conclusion, holding that such instructions are reversible error and that there is no good reason why in addition to a self-interest instruction on witnesses in general, another instruction singling out the defendant is necessary.

For many years this court has held that an instruction of this sort is permissible if it noted that all witnesses who might have a self-interest, not just the defendant, should be viewed critically. *Anderson v. State,* 133 Wis. 601, 114 N.W. 112 (1907) ; *Emery v. State,* 101 Wis. 627, 78 N.W. 145 (1899). Wisconsin Jury Instruction, Criminal 310 meets this test. Courts and attorneys have relied on the validity of this instruction for years.

The instruction read *in toto* does not direct the jury to disbelieve the defendant; such would be clearly error. It does instruct the jury to weigh the defendant's testimony in the same manner that it weighs the testimony of other witnesses. Obviously the defendant has an interest in the outcome of the trial, however the jury is told to consider the interest of any other witness in the outcome of the trial if any appears; and not to discredit the testimony of the defendant merely because he is charged with a crime. We do not believe the instruction denies the defendant a fair trial and the use of the instruction is approved.

*By the Court.*—Judgment and order reversed and remanded for a new trial.

ABRAHAMSON, J. *(concurring)*. I am mindful that the decisions of the United States Supreme Court regarding searches and seizures and the fourth amendment are binding on this court as a matter of federal constitutional law. Although the issue was not raised by the parties, I would, nevertheless, determine the validity of the warrantless search under our state constitution which also guarantees "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." Art. I, sec. 11, Wis. Const. In *State v. Doe,* 78 Wis.2d 161, 171, 254 N.W.2d 210 (1977) we said:

"Certainly, it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the Fourteenth Amendment. See William J. Brennan, Jr., *State Constitutions and the protection of Individual Rights,* 90 Harv. L. Rev. 489 (January 1977). This court has never hesitated to do so. . . ."

*See also Oregon v. Hass,* 420 U.S. 714, 719 (1975) ; *Michigan v. Mosley,* 423 U.S. 96, 121 (1975) (Brennan, J. dissenting opinion) ; *State v. Opperman,* 247 N.W.2d 673 (S.D. 1976).