COURT OF APPEALS
DECISION
DATED AND FILED

July 24, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1807-CR**

Cir. Ct. No. 2020CF508

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOHN C. WENDT,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Wood County: TODD P. WOLF, Judge. *Affirmed and cause remanded with directions*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. A jury found John Wendt guilty of possession of methamphetamine and carrying a concealed weapon. Wendt moved for postconviction relief, arguing that he was entitled to a new trial because his trial counsel was constitutionally ineffective. The circuit court denied Wendt's postconviction motion after a hearing, and Wendt appeals. Specifically, Wendt argues that counsel was ineffective for failing to seek to exclude, and for highlighting, evidence at trial regarding guns and methamphetamine that Wendt contends was irrelevant and prejudicial. For the reasons stated below, we affirm the court's denial of Wendt's motion.[1]

## BACKGROUND

¶2 The following facts are derived from the testimony at trial and are undisputed unless otherwise noted. In July 2020, police were dispatched to the home of Shelly Schmidt. With Schmidt's consent, police searched the home. Police observed an "open-faced" gun cabinet in the living room with several long guns displayed in it. In the bedroom, police found a clear plastic baggy on top of a dresser that contained a residue of white crystalline material, which later tested positive for methamphetamine. Schmidt told police that the guns belonged to Wendt, who stored property at Schmidt's home.

---

[1] Wendt was also found guilty of possession of drug paraphernalia, but he moved to vacate his conviction and for the entry of a judgment of acquittal on that charge. The circuit court granted that motion, and ordered that "[t]he Clerk shall enter an amended judgment of conviction and a judgment of acquittal in accordance with this order." Although an amended judgment of conviction was entered, due to what Wendt characterizes as a "postconviction oversight," no judgment of acquittal was entered, and Wendt asks that we remand so that the judgment of acquittal may be entered. The State does not dispute that this was an oversight or that remand for the entry of a judgment of acquittal is appropriate. Therefore, although we affirm with respect to all other issues raised on appeal, we remand with instructions to enter a judgment of acquittal on the possession of drug paraphernalia charge.

2

¶3      While police were at Schmidt's house, Wendt arrived in his pickup truck. Wendt told police that he was there to retrieve his guns. After a K-9 unit performed a "free air sniff" of the exterior of Wendt's truck and alerted on the driver's side door to the presence of drugs, police searched the truck. Police found a pistol wedged between the driver's seat and the seat adjacent to it and a rifle behind the driver's seat. Police also found, on the floor of the truck,[2] a small, cylindrical container with white crystalline powder inside that later tested positive for methamphetamine. In the center console, police also found a small piece of bendable straw, the end of which had a residue of white crystalline powder that later tested positive for methamphetamine.

¶4      The State filed a single complaint that charged both Wendt and Schmidt with crimes. Pertinent here, Wendt was charged with possession of methamphetamine and carrying a concealed weapon as to the pistol, and Schmidt was charged with possession of methamphetamine and possession of drug paraphernalia. The charges against Schmidt were resolved pursuant to a plea agreement.

¶5      At Wendt's trial, the State argued that the pistol that was found in Wendt's truck was concealed, and that Wendt knowingly possessed the container of methamphetamine that was found in his truck. The State presented the evidence set forth above through the testimony of two police officers and a controlled substance analyst from the Wisconsin State Crime Laboratory. One of

---

[2] Both police officers testified that the methamphetamine was on a raised area of the floor of the truck in front of the center console. However, Wendt's counsel argued, based on body camera video of the search that was shown to the jury, that the container was in fact found under the passenger seat. Where exactly the methamphetamine was found is not significant for purposes of our analysis.

the officers also testified that straws are commonly used to ingest methamphetamine. In addition, an officer testified that he saw Wendt's truck at Schmidt's home "a majority" of the days that he worked, "sometimes during the day, most often at night, every night."

¶6 Wendt's defense theory was that the pistol found in his truck was not concealed and that he was unaware of the methamphetamine found in his truck, which did not belong to him and was left there by Schmidt. Pertinent here, Wendt called as a witness his friend, August Hogan. Hogan testified that Wendt lived on Hogan's property, and that either the day that police were dispatched to Schmidt's house or the day before, Wendt and Hogan had arranged to meet at Schmidt's house, where Wendt stored property. Hogan testified that when he arrived at Schmidt's house, Wendt's truck was in the driveway, and that Hogan watched as Schmidt came out of the house "muttering" and got into the passenger side of Wendt's truck. Hogan testified that he left after he saw Schmidt get into Wendt's truck because he did not see Wendt anywhere and because Hogan figured that Wendt and Schmidt would wind up arguing.

¶7 The State then called as a rebuttal witness one of the police officers who had already testified. The officer testified that Schmidt had not, during the course of the investigation, told police that Wendt had methamphetamine in his truck.

¶8 The jury found Wendt guilty of possession of methamphetamine and carrying a concealed weapon. Wendt moved for postconviction relief, arguing that his trial counsel was constitutionally ineffective and that he was therefore entitled to a new trial. Specifically, Wendt argued that the evidence regarding the guns and methamphetamine found in Schmidt's home was irrelevant and

prejudicial, and that trial counsel's performance was constitutionally deficient because counsel did not seek to exclude this evidence, by either bringing a motion in limine before trial or objecting at trial, and in fact highlighted the evidence in various ways at trial. After a *Machner*[3] hearing at which Wendt's trial counsel testified, the circuit court denied Wendt's postconviction motion.

¶9    Wendt appeals.

## DISCUSSION

¶10    "A claim of ineffective assistance of counsel has two prongs: deficient performance and prejudice." *State v. Jackson*, 2023 WI 3, ¶10, 405 Wis. 2d 458, 983 N.W.2d 608. The burden is on the defendant to prove both prongs. *State v. Moats*, 156 Wis. 2d 74, 100, 457 N.W.2d 299 (1990). "If the defendant fails to make a sufficient showing on one prong, it is unnecessary to address the other." *State v. Bucki*, 2020 WI App 43, ¶81, 393 Wis. 2d 434, 947 N.W.2d 152.

¶11    To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness. *Jackson*, 405 Wis. 2d 458, ¶10. To do so, a defendant must show "that counsel took an approach that no competent lawyer would have chosen." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021). To demonstrate prejudice, a defendant must show a reasonable probability that the result would have been different were it not for counsel's error. *Jackson*, 405 Wis. 2d 458, ¶10. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" ***State v.***

---

[3] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*Guerard*, 2004 WI 85, ¶43, 273 Wis. 2d 250, 682 N.W.2d 12 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶12 "'An ineffective assistance of counsel claim presents a mixed question of fact and law.'" *State v. Mull*, 2023 WI 26, ¶31, 406 Wis. 2d 491, 987 N.W.2d 707 (quoting *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95). We uphold a circuit court's findings of fact unless they are clearly erroneous. *Mull*, 406 Wis. 2d 491, ¶31. However, "whether counsel's conduct violated the defendant's right to effective assistance of counsel is a question of law" that we review independently. *State v. O'Brien*, 223 Wis. 2d 303, 325, 588 N.W.2d 8 (1999).

¶13 As he did in his postconviction motion, Wendt argues on appeal that the evidence regarding the guns and methamphetamine found in Schmidt's home was irrelevant and prejudicial, and that trial counsel was ineffective for not seeking to exclude this evidence and for highlighting it in various ways. Addressing separately the evidence regarding the guns found in Schmidt's home and the evidence regarding the methamphetamine found in Schmidt's home, we conclude that counsel's performance did not constitute ineffective assistance because Wendt has not shown prejudice.

*I. Guns*

¶14 Wendt argues that counsel should have sought to exclude the following testimony. One of the police officers testified that when he entered Schmidt's house, "I noticed that there was a[n] open-faced gun cabinet" that had "several long guns standing upright displayed" and that was "not secured." The officer testified that Schmidt told him that the guns belonged to Wendt, which Wendt subsequently confirmed.

6

¶15     Wendt further argues that counsel also "highlighted" the evidence regarding the guns in Schmidt's home in two ways.  First, during his cross-examination of one of the police officers, counsel elicited testimony that Schmidt stated that Wendt used Schmidt's home as a storage unit, that Wendt came and went from Schmidt's home, and that Wendt's truck was at Schmidt's home "more often than not."  Second, during his closing argument, counsel challenged the premise that Wendt lived at Schmidt's home, which Wendt contends prompted the prosecutor to note in rebuttal that Wendt had his guns in a display cabinet in Schmidt's home.

¶16     At the *Machner* hearing, counsel testified that he "didn't think there was an issue because the guns in the house [weren't] concealed."  Counsel also stated that the testimony regarding the guns "was a cursory discussion [and] wasn't a focus," and that "people own guns in the State of Wisconsin, so it's not unusual to have guns in a house."

¶17     We reject Wendt's argument that counsel's conduct regarding this evidence constituted ineffective assistance because we conclude that Wendt has not met his burden of demonstrating that he suffered prejudice as a result.  Specifically, Wendt fails to show that, had evidence regarding the guns in Schmidt's house not been admitted or "highlighted," there is a reasonable probability that the result would have been different.

¶18     In arguing that the evidence was prejudicial, Wendt relies on *Thompson v. State*, 83 Wis. 2d 134, 265 N.W.2d 467 (1978).  In *Thompson*, the defendant was charged with armed robbery, and our supreme court concluded that it was error to introduce evidence regarding a gun that the defendant had in his possession at the time of his arrest but that was not involved in the armed robbery.

7

*Thompson*, 83 Wis. 2d at 137, 143-44, 146.  The *Thompson* court stated that "'such evidence tends to show[] not that [the defendant] committed the crime, but only that [the defendant] is the sort of person who carries deadly weapons.'" *Id.* at 144 (quoted source omitted).

¶19  Wendt's reliance on *Thompson* is misplaced because *Thompson* is easily distinguishable.  Here, even if the testimony regarding the guns in Schmidt's home had not been admitted, the jury was aware that Wendt possessed guns—namely, the two guns that police found in Wendt's truck.  To the extent that the evidence regarding the guns in Schmidt's home "tend[ed] to show … that [Wendt] is the sort of person who carries deadly weapons," *see id.*, this was not prejudicial because the evidence regarding the guns in Wendt's truck did so in any event.

¶20  Moreover, counsel's strategy regarding the concealed-carry charge was not to dispute that Wendt possessed the pistol that was wedged between the seats, but rather to argue that the pistol was not in fact concealed—*i.e.*, that enough of the pistol was visible such that the State could not prove the required element of concealment.  *See* WIS JI—CRIMINAL 1335 (2025) (stating as an element of the crime that "[t]he weapon was concealed," and that "'[c]oncealed' means hidden from ordinary observation.  The weapon does not have to be completely hidden.").  For example, during counsel's opening argument, counsel stated:

> With regard to the weapons, I believe that the testimony will indicate, and the video if it's shown, will show that [the pistol] wasn't concealed.  Mr. Wendt was transporting weapons.  He had come over to the house in fact to get some guns that were his in the house.  He was getting them all together.  He was gonna take them and put them in storage and put them away.

8

Given the nature of Wendt's defense as to the concealed-carry charge, the evidence that Wendt's guns were openly displayed in Schmidt's home was not prejudicial because it did not "tend to show … that [Wendt] is the sort of person" who conceals guns. *See Thompson*, 83 Wis. 2d at 144.

¶21     Wendt argues that "[w]hen, as here, it's a close call whether a gun was concealed, jurors may be more likely to credit testimony that it *was* because they consider the defendant a generally dangerous person—the type of person who would hide a weapon." The *Thompson* court concluded that because the jury knew that the defendant had a gun in his possession when he was arrested, the jury was more likely to find that the defendant committed armed robbery. *See id.* at 146. This conclusion does not support Wendt's argument here: the fact that an individual owns additional guns does not make it more likely that the individual would conceal one of those guns. And as noted, the guns in Schmidt's house were not concealed, but rather were displayed in what was described to the jury as an "open-faced," "decorative" gun cabinet. Thus, unlike in *Thompson*, in which the evidence was prejudicial to the defense, here, rather than being prejudicial, the weapons at issue could have assisted Wendt's defense insofar as Wendt would be less likely to conceal a weapon when he had weapons displayed openly in the home. Accordingly, Wendt's reliance on *Thompson* is unavailing.

¶22     In sum, we conclude that Wendt has not met his burden of establishing prejudice because he has not shown a reasonable probability that the result would have been different were it not for the introduction and "highlighting" of the evidence regarding Wendt's guns in Schmidt's home. *See Jackson*, 405 Wis. 2d 458, ¶10. We therefore reject Wendt's argument that counsel's conduct regarding this evidence constituted ineffective assistance.

*II. Methamphetamine*

¶23 As stated, police testified that on top of a dresser in Schmidt's bedroom there "was a clear, plastic baggy that had a white crystalline material, residual material in it," and the State's controlled substance analyst testified that the residue in the baggy tested positive for methamphetamine. One of the officers also testified that he saw Wendt's truck at Schmidt's home "a majority" of the days that he worked, "sometimes during the day, most often at night, every night." Counsel did not seek to exclude any of this testimony, and did not object to the State's references to this evidence in its opening and closing arguments. Further, counsel addressed this testimony by (1) seeking to distance Wendt from Schmidt's home through counsel's cross-examination of one of the police officers, during which testimony was elicited that actually connected Wendt to Schmidt's home; and (2) by arguing that, consistent with Hogan's testimony, Wendt lived on Hogan's property, and that the State had not proven that Wendt had any knowledge of the methamphetamine in Schmidt's home.

¶24 Wendt argues that counsel's conduct on this topic constituted ineffective assistance. We reject Wendt's argument because we conclude that Wendt fails to show prejudice. Specifically, Wendt fails to show that were it not for the conduct that Wendt argues constitutes deficient performance, there is a reasonable probability that the outcome would have been different. As we now explain, even had the jury not heard the evidence regarding the methamphetamine that police found in Schmidt's home or counsel's questions on cross-examination and in closing argument regarding this evidence, there is no reasonable probability that Wendt would have been acquitted, given the strength of the State's case and the nature of Wendt's defense.

¶25   The evidence at trial showed the following.  While police were at Schmidt's home, Wendt arrived in his truck.  He was the only person in the truck. When police searched the truck, they found the container of methamphetamine on the floor of the truck, and the small piece of straw with methamphetamine residue in the center console.

¶26   Rather than disputing any of this, Wendt's defense regarding the possession of methamphetamine charge was to argue that Wendt had no knowledge of the methamphetamine in his truck.  Specifically, by presenting Hogan's testimony about Hogan having seen Schmidt get into Wendt's parked truck while "muttering," Wendt's defense was to suggest that Schmidt had planted the methamphetamine there for officers to find, or at the very least, that the methamphetamine in the truck had been left there by Schmidt, and Wendt argued that he was unaware of its presence because the truck was messy.

¶27   Given the strength of the evidence presented by the State and Wendt's defense theory, the evidence of the methamphetamine in Schmidt's home did not prejudice Wendt—indeed, it supported his theory of the case because the fact that there was methamphetamine in Schmidt's bedroom made it more likely that the methamphetamine in the truck was left there by Schmidt.

¶28   In arguing that he was prejudiced, Wendt relies on questions relating to Hogan's testimony that the jury submitted during its deliberations, which Wendt argues "reveal that the jury gave Hogan's testimony, and thus Wendt's defense to the drug charge, serious consideration."  However, as stated, that there was methamphetamine in Schmidt's bedroom supported the inference invited from Hogan's testimony that Schmidt left the methamphetamine in Wendt's truck, and the jury's questions about Hogan's testimony thus do not support Wendt's

11

argument that he was prejudiced by the evidence of the methamphetamine in Schmidt's home.

¶29    Wendt also argues that he was prejudiced because the "other acts" evidence of the methamphetamine in Schmidt's home "made Wendt look like a … person who tends to possess drugs." In support of this argument, Wendt cites WIS. STAT. § 904.04(2)(a) (2023-24), which governs the admissibility of other acts evidence.[4] However, Wendt does not develop an argument that the evidence of the methamphetamine in Schmidt's home was inadmissible other acts evidence under the relevant framework set forth in *State v. Sullivan*, 216 Wis. 2d 768, 773, 576 N.W.2d 30 (1998). This failure is significant because other acts evidence is not necessarily inadmissible. Although, consistent with Wendt's argument, *Sullivan* recognizes that other acts evidence "magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged," *id.* at 783, under *Sullivan*, other acts evidence is nonetheless admissible if it is offered for a permissible purpose, if it is relevant, and if its probative value is not substantially outweighed by, as pertinent here, the danger of unfair prejudice or confusion of the issues, *id.* at 772-73; *see also State v. Johnson*, 184 Wis. 2d 324, 340, 516 N.W.2d 463 (Ct. App. 1994) ("In most instances, as the probative value of relevant evidence increases, so will the *fairness* of its prejudicial effect."). In the absence of a developed argument under the *Sullivan* framework that the testimony regarding the methamphetamine found in Schmidt's home was impermissible other acts evidence, we decline to address Wendt's argument that he was prejudiced by this evidence as a result of it being

_____

[4] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

"other acts" evidence. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").[5]

¶30    Finally, Wendt argues that evidence of the methamphetamine in Schmidt's home was prejudicial because it confused the issues at trial. Specifically, Wendt argues that "[r]easonable jurors would believe the State's introduction of evidence regarding methamphetamine in two places meant it could consider both when determining whether Wendt possessed methamphetamine," and that the evidence of the methamphetamine in Schmidt's home "distract[ed]" the jury "with a sideshow dispute." However, as Wendt concedes in his reply brief, it was clear that the State was prosecuting Wendt for possession of methamphetamine based on the methamphetamine that was in Wendt's truck, and not based on the methamphetamine that police found in Schmidt's home.[6] In light of this concession, we reject Wendt's argument. *See Pettit*, 171 Wis. 2d at 646.[7]

---

[5] To be sure, Wendt, in his reply brief, does cite *State v. Sullivan*, 216 Wis. 2d 768, 789-90, 576 N.W.2d 30 (1998), and argues that the probative value of the evidence of the methamphetamine in Schmidt's home was outweighed by its prejudicial effect. However, "[w]e do not address issues raised for the first time in a reply brief." *See State v. Mata*, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999). Here, we observe that the State explicitly argued that Wendt failed to advance a developed argument under *Sullivan* in his appellant's brief, and that the State accordingly did not address the application of the *Sullivan* analysis in its response brief.

[6] For example, in the prosecutor's opening argument, the prosecutor began by telling the jury, "This case is about Mr. Wendt pulling up on scene in his truck, officers searching his truck, finding a concealed pistol … in that truck, and then finding methamphetamine in that truck and he says there's nothing in there. That's all there is to it." Similarly, in closing, the prosecutor argued:

(continued)

¶31   Accordingly, we conclude that Wendt has failed to show that he was prejudiced because he has not demonstrated that there is a reasonable probability that the outcome would have been different were it not for the conduct that Wendt argues constitutes deficient performance.

## CONCLUSION

¶32   For the reasons stated, we affirm the circuit court order denying Wendt's motion for a new trial based on his ineffective assistance of counsel

---

I told you at the beginning of the day, pretty straightforward case. I figure there's gonna be some disputing about the facts, but really this case is about John Wendt pulling up on scene in his truck, that's registered to him, he's the only person who gets out of that vehicle. There's a loaded gun right next to him, pushed all the way down in there and about 2 to 3 inches of it is exposed.

And when officers are searching his truck, they also find a container of methamphetamine somewhere down in between the seats.… And [a detective] testified that that was twelve doses of methamphetamine. You also heard that they found a straw and that straw was found inside the center console that tested positive for methamphetamine as well.

… Ladies and gentlemen, I think that kind of gives you the whole gist of the case.

[7] At one point in Wendt's appellant's brief, he argues that "[s]ome jurors may have concluded that the methamphetamine in Schmidt's home was Wendt's, while others may have concluded that the presence of methamphetamine in both the house and the truck made it all but certain *some* of it belonged to Wendt." However, Wendt does not otherwise develop this argument and, as stated, Wendt concedes in his reply brief that the State was prosecuting Wendt with possession of methamphetamine based on the methamphetamine that was in Wendt's truck, which was clear from the prosecutor's argument at trial. Accordingly, we do not address this argument further. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

14

claim. However, for the reasons stated in footnote 1, we remand for entry of a judgment of acquittal on the possession of drug paraphernalia charge.

*By the Court.*—Judgment and order affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.